E. B. FOWLKES v. WILLIAM M. BAKER.

The court below instructed the jury that slight evidence was sufficient to establish an authority from a parent to a minor son to purchase necessaries for himself; as, for instance, that the parent knew of the purchase and made no dissent, or that he knew of the son's purchasing on a credit, and did not, within a reasonable time, forbid further credit being extended to him; or that he knew of the child's using the goods, or having received them, and made no objection: *Held*, that the instruction was correct.

The question, whether the articles purchased by the minor were necessaries or not, becomes important only by reason of its regulating the amount of evidence requisite to establish the father's liability. If not necessaries, the authority of the parent must be proved; but, if they were necessaries, such authority will be presumed, unless it be rebutted by circumstances showing that the parent had himself supplied the son, or was ready to do so.

See the statement for a case where the father was held liable for the articles purchased.

If the father has notice that the son is making the account, he is liable, although the articles are not necessaries, unless he made his objection at the time.

ERROR from Colorado.     The case was tried before Hon. GEORGE W. SMITH, one of the district judges.

Baker sued Fowlkes upon a long merchant's account for $272 55, all of which was for goods furnished to the son of the defendant, a minor under twenty-one years of age, except a plug of tobacco, which was purchased by the father, and charged because the merchant could not make change. After this the son inquired if his father had an account at the store, and learning that he had, he ran up

the account, a few of the articles being for the slaves on the plantation, but nearly all for the son, some of which were necessaries and others not. The proof offered to establish the liability of the father was, that the son was an extravagant fellow, and in the habit of purchasing goods from the merchants in Columbus which the father had paid without objection, and that as to one article (a pair of saddle-bags,) purchased by the son and charged in the account, the father was seen to use them. It was also proved that the father was a man of large fortune, having two plantations and many slaves, and moving in the highest circles of society, and that the son resided upon one of the plantations, and seemed to have some control of the slaves, as no other white person resided upon that plantation; that he was a reckless, extravagant youth, much beyond the control of the father, and that the father sometimes threatened not to pay, and to tell the merchants not to credit him, but he said that he concluded not to do so, but to try to control him himself. When the account was presented to him at the end of the year, the defendant refused to pay it, denying the authority to give the credit. The question was authority or not. The instructions of the court are given in the opinion. The jury struck out the drinkables, and gave the plaintiff a verdict for the balance of the account.

*Webb & Jarmon*, for plaintiff in error, relied upon the authorities, some of which are quoted in the opinion, and fully discussed the facts of the case.

*Edward Collier*, for the defendant in error, cited 1 Pars. on Cont., 251, 252; Baker v. Keene, 2 Stark., 501; McPherson on Inf., 511, and discussed the facts of the case. He also relied upon Story on Cont., § 79; 2 Kent's Com., 186; Bryan v. Jackson, Conn., 288; Watts v. Johnson, 4 Tex., 311, &c.

WILLIE, J.—The only portion of the charge assigned

for error, is that in reference to what would be sufficient evidence of an authority given by a parent to a child to purchase necessaries for himself. The court instructed the jury on this point that, if the articles were necessaries, slight evidence would be sufficient; such as where the father knows of the purchase, and makes no dissent; or knows of the child's purchasing on a credit, and does not within a reasonable time forbid further credit being extended to him; or where he sees the child wearing the clothes, or knows that he had received them, and made no objection.

Much conflict of authority exists as to the ground upon which rests the legal liability of a father for necessaries furnished his infant child. Some insist that it grows out of the natural duty of the parent to provide sustenance and support for his offspring; others say that it is a question of agency and authority, and that a parent is only bound for such articles as are furnished with his consent, express or implied. The former doctrine is laid down by Chancellor Kent, and with him is the weight of American authority. (2 Kent's Com., 191; 1 Pars. on Cont., 251; Stanton v. Wilson, 3 Day, 37; Edwards v. Davis, 16 Johns., 284.) The latter opinion was maintained by the supreme court of Vermont, in the case of Gordon v. Potter, 17 Vt., 350; by the supreme court of Illinois, in Hunt v. Thomson, 3 Scam., 180; and by that of Alabama, in Owen v. White, 5 Port., 435.

It will not be necessary for us, in the present case, to enter into a critical examination of the cases which have discussed this subject, or to attempt to deduce therefrom the true principle upon which such liability is founded. The result of all the authorities seems to be properly laid down by Parsons in his treatise on Contracts, vol 1, p. 253, "That, where the goods are not necessaries, the father's authority must be proved to render him liable; where they are necessaries, the father's authority is presumed, unless

he supplies them himself, or was ready to supply them. Where the infant lives with the father, or under his control, his judgment, as to what are necessaries, will be so far respected, that he will be held liable only for things furnished to the infant to relieve him from absolute want. Where the infant does not live with the father, but has voluntarily left him, the authority of the father must be strictly proved, unless, perhaps, in cases of absolute necessity, and where he has been deserted by the father, or driven away from him, either by command or cruel treatment, there the infant carries with him the credit and authority of the father for necessaries."

The question, therefore, as to whether the articles purchased by the minor are necessaries or not, becomes important only as it regulates the amount of evidence necessary to establish the father's liability. The authority of the parent to make the purchases must be proved in the one case, and in the other it is inferred, unless rebutted by circumstances showing that the parent had supplied the infant himself, or was ready to supply him. The charge of the court, then, so far as it decides that the father's authority to purchase necessaries might be inferred from slight evidence, is correct, as an abstract principle of law. We think, also, that the circumstances mentioned in the charge are sufficient to amount to the evidence required in such cases. But the ground of objection to this instruction raised by the bill of exceptions is, that "it might have led the jury to believe that the mere fact of credit having been extended to the minor at the stores of other merchants in the place would be a circumstance sufficient of itself to authorize plaintiff to extend credit to the minor and charge the goods to defendant." The charge places the liability on the ground that the father's knowledge that the son was purchasing goods on his credit, and his failure to object thereto, furnished sufficient evidence of an authority to make the purchases. And in this we think the

charge was correct, and, if the facts of the case justified it, the jury were right in finding a verdict for the plaintiff.

· The main and principal facts proved on the trial, which tended to fix the liability of the defendant, were about as follows: The defendant was a man of wealth, residing near Columbus; he owned two plantations, upon one of which this son resided, and apparently had the control of it. The son was of an extravagant disposition, and during the year 1857 made accounts at several stores in the town of Columbus, all of which his father paid without objection. In 1858 he contracted at the store of the plaintiff the account sued on. Some of the articles charged in this account were necessaries for himself, some were luxuries which he might have dispensed with, and some were evidently for the use of the plantation. Among other things charged in the account was a pair of saddle-bags, and sometime after their purchase defendant was seen using them. In December, 1858, or January, 1859, defendant stated to a merchant in the place that he had a notion to go around to all the stores in Columbus, and notify all the merchants not to let his son have any goods on his account, but, on reflection, he concluded not to do it, on the ground that it might mortify his son, and lower him in the estimation of his associates, and that he would try and restrain him himself in the amounts he should buy, and requested the merchant to take back a gold watch and some other articles bought from him. Other merchants proved that defendant had always paid the accounts of his son, and for this reason they continued to let him have goods. There was a good deal of other proof produced on the trial, but not of an important bearing on the case.

The above facts we consider entirely sufficient to establish an authority from the father to the son to purchase goods at the expense of the former. The merchants of the place were led to believe that such an authority existed, from the fact that the son's accounts were regularly paid

by defendant. The defendant himself was well aware that his son was constantly purchasing goods of the merchants in Columbus, and having them charged to his father. This is fully proved by the fact that he threatened to stop such purchases but for the mortification it would cause him. He knew that his former ratification of his son's contracts had induced the merchants to sell goods to his son, and that some notice on his part was necessary to exonerate him from future liability.

The jury found a verdict for the plaintiff for all he claimed, except enough to cover the amount of wine charged in the account. It is said that some of the remaining articles were not necessaries. Upon a strict construction of the term, they might not be so considered. But admitting that in strictness they were not necessary for the subsistence and support of the son, we think the father is, under the circumstances, still liable for their value. We have already seen that it only requires a greater degree of proof, as to consent and authority, when the articles are not necessaries, to fix the father's liability.

In the case of Thayer v. White, 12 Met., 343, the defendant's son had several times bought goods of the plaintiff with his father's consent. Subsequently he purchased some glass ware and paper-hangings of plaintiff on six months' credit. Defendant was immediately notified by letter of the purchase, and failed to reply. It was held, in an action against the father for the price of the goods, that his failure to reply and object to the purchase amounted to a ratification of them, and he was held liable for the debt. The goods in the case just cited were not necessaries for the son, and he was not proved to be a minor. The only substantial difference between the ratification in that case and the present one is, that there the previous purchases were made of the plaintiff himself; whereas in this, they were made of other merchants in the same place. Knowledge of these purchases, however, was brought home

to the defendant; he regularly paid the accounts contracted by his son; he never forbade the sale of goods to him, and even made use himself of one of the articles purchased by his son of the plaintiff, and which was charged in the very account upon which this suit is brought.   By this means he gave his son a credit in the community, and ratified his contracts after they were made, which was equivalent to an authority to purchase.

We do not think, under the circumstances, that the jury were wrong in coming to the conclusion that the authority to purchase extended as well to the plaintiff as to other merchants in the place.

The motion for a new trial was properly overruled. We cannot see that the newly-discovered evidence could have produced upon another trial a different result from the one already attained.

There is no error in the judgment, and it is

AFFIRMED.